CARLA HEACOCK *vs.* GREGG HEACOCK.

No. 89-P-618.

Norfolk. November 15, 1990. - March 25, 1991.

Present: KASS, KAPLAN, & IRELAND, JJ.

*Practice, Civil*, Service of process, Failure to prosecute, Dismissal, Judicial discretion.

A judge acting on a motion brought under Mass.R.Civ.P. 41 (b) (2) properly dismissed a civil action for unreasonable delay in service of the complaint, where the evidence supported his findings that the reason for the delay was to gain unfair tactical advantage and that the defendant had been prejudiced. [306-309]

CIVIL ACTION commenced in the Superior Court Department on April 22, 1985.

After review by the Supreme Judicial Court, 402 Mass. 21 (1988), the case was heard by *Andrew G. Meyer*, J., on a motion to dismiss.

*Cynthia J. Cohen* for Carla Heacock.

*Henry P. Sorett* for Gregg Heacock.

KASS, J. *Heacock* v. *Heacock*, 402 Mass. 21 (1988) ("*Heacock I*"), announced that a divorce judgment did not, in the circumstances,[1] on claim or issue preclusion principles, bar the maintenance of an independent tort action by one

---

[1]The circumstances were that there was no way to tell from the record of the divorce case whether the judge had made a finding about the battery which formed the basis for the later tort action or whether he had factored it into the judgment of divorce. There was no appeal from the judgment of divorce and, therefore, no compulsion upon the Probate Court judge to write findings of fact. See Mass.R.Dom.Rel. 52(a). One can imagine cases where the record discloses that the parties have litigated, and the judge has ruled on, claims or issues which are the basis of a separate tort action brought later. Were that the case, judgment preclusion doctrine might bar the later action.

spouse against the other based on an event which occurred during the marriage.

Expressly left for further proceedings by *Heacock I*, at 25, was whether Carla Heacock, who had filed the tort action, had impermissibly delayed serving the complaint on her then husband, Gregg Heacock. The significant dates are as follows: the alleged assault and battery occurred on April 22, 1982; Carla Heacock filed her complaint in the tort case on April 22, 1985, the last day within the three-year statute of limitations, G. L. c. 260, § 4, for such an action and before the trial of the divorce case; the parties were divorced on August 19, 1985; and Carla Heacock served her complaint on Gregg Heacock on April 18, 1986. It is not disputed that Gregg first became aware of the tort action filed against him when the complaint was served, i.e., almost an entire year after Carla filed it. Nor is it disputed that the decision to delay serving the complaint was deliberate.

A judge of the Superior Court, acting on a motion brought under Mass.R.Civ.P. 41(b)(2), 365 Mass. 804 (1974) (failure to prosecute), decided: (1) that Carla's delay in serving the complaint was not excusable; (2) that the delay had deliberately been contrived for tactical advantage; and (3) that the delay had prejudiced Gregg's ability to defend against the tort action. Having so concluded, the judge allowed the motion and dismissed Carla's action, with prejudice. From the judgment of dismissal, Carla has appealed. We affirm.

Had the complaint been filed after July 1, 1988, the date upon which Mass.R.Civ.P. 4(j), as appearing in 402 Mass. 1401 (1988), became effective, the failure to serve the complaint upon the defendant within ninety days after filing would have made the complaint subject to dismissal, the only saving grace possible being a show of good cause for delay by the party upon whom the duty of service rested.[2] As to Carla's complaint, filed April 22, 1985, more general princi-

---

[2]Under the order (dated March 29, 1988) of the Supreme Judicial Court promulgating new rule 4(j), plaintiffs in cases filed before July 1, 1988, in which service had not been made had ninety days from July 1, 1988, to make service of complaints.

ples apply concerning timeliness of serving a complaint. Those principles are not wholly eclipsed by the new Mass.R.Civ.P. 4(j); it is possible to conjure up facts in which service of a complaint thirty or sixty days after filing might be an unreasonable delay. Those occasions would be rare in the extreme and, as a general proposition, service of a complaint within ninety days of filing will count as having reached a safe harbor.

What is before us for review is the lawfulness of the Superior Court judge's dismissal of Carla's tort action under Mass.R.Civ.P. 41(b)(2), for failure to prosecute. It is a category of judicial act which rests in the sound discretion of the judge and we will not disturb the judge's disposition unless there has been an abuse of that discretion. *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. 639, 641 (1986), and cases and authorities therein cited. The reviewing court does not substitute its judgment. *Ibid.* For cases which deal specifically with failure to serve a complaint with reasonable promptness, see *School Comm. of Holyoke* v. *Duprey*, 8 Mass. App. Ct. 58, 60-62 (1979); *Ahern* v. *Warner*, 16 Mass. App. Ct. 223, 227-228 (1983); *Brissette* v. *Crantz*, 23 Mass. App. Ct. 213, 214-215 (1986); *Hoch* v. *Gavan*, 25 Mass. App. Ct. 550, 552-553 (1988). The criteria consistently set forth as especially important in considering a motion to dismiss for unreasonably tardy service of a complaint are: (1) delay for unfair tactical advantage and (2) prejudice to the defendant. The Superior Court judge found both elements present in this case.

The judge's finding that service upon the defendant had been delayed for unfair tactical advantage had foundation in the testimony of the plaintiff Carla's lawyer in the tort case, Mr. Jeffrey Newman, who offered as his principal reason for the delay that he desired to work up more potent evidence that Carla's epileptic seizures had been brought on by Gregg's battery. Further evidence, however, is commonly gathered during the pendency of proceedings. Indeed, the instruments of discovery are not available while a complaint remains up a plaintiff's sleeve, and one would suppose the

search for evidence would, in some instances, be handicapped by that unavailability. It is also a startling proposition, which impugns two professions at once, that medical testimony can be better obtained on the sly. The transcript of the hearing before the motion judge discloses that he regarded Mr. Newman's rationale skeptically.

On appeal, plaintiff's appellate counsel add as a justification for not serving Carla's tort complaint on Gregg reasonably promptly that doing so would "improperly affect the probate proceedings," i.e., that the divorce case would be more justly disposed of if the defendant and the Probate Court judge were kept in the dark. That is a still more astonishing proposition because it suggests that the discretion and judgment of the Probate Court would be distorted by knowledge of the facts. As *Heacock I* illuminates, particularly in n.3 at 25, a Probate Court judge can, with equilibrium, handle information about pending claims of a spouse independent of the divorce case, and the information should be made available. Although, of course, *Heacock I* had not been decided at the time Mr. Newman elected to delay service of the tort complaint, it should have occurred to him that withholding the relevant fact of the tort suit from the defendant and, consequently, the Probate Court judge, was conduct less than candid.[3]

Supporting the judge's finding of prejudice to the defendant were two items of evidence. Gregg had elected not to appeal the divorce judgment. The divorce trial had dealt with his assaultive behavior on April 22, 1982, and the harm to Carla that had flowed from it. As might be expected, the evidence was conflicting, but Gregg could reasonably have

---

[3]Mr. Newman did not represent Carla in the divorce case. He had referred the divorce matter to his brother-in-law, Mr. Mark Witkin. The latter protested that he was entirely unaware that the tort action had been filed. Mr. Newman testified that he had never talked with Mr. Witkin about the Heacock case, a circumstance the motion judge thought "[m]ost amazing." Similarly astonishing is Mr. Newman's assertion, in an affidavit, that for him to have communicated with Mr. Witkin about the case "would have been a violation of the attorney-client privilege and no duty existed for me to do so."

thought that he had paid in the divorce judgment for his violence. Had he known that the battery was the subject of a separate tort claim, he might have chosen to appeal from the divorce judgment. Carla postponed service of her tort complaint on Gregg not only beyond the date of the divorce judgment, but beyond the time during which Gregg could have claimed an appeal. There was evidence that, when the divorce judgment became final, Gregg destroyed records which could have helped him defend against Carla's tort claims. Gregg's lawyer in the divorce proceedings, Mr. Barry J. Connelly, stated by affidavit that had he known of the tort action, he would have moved to consolidate the divorce case with the tort case. Failing that, he would have moved to stay the divorce action, pending adjudication of the tort suit. Mr. Connelly stated that he also would have attempted to obtain an independent evaluation of Carla's medical condition and would have taken "steps to locate and preserve the testimony of all those persons who could corroborate Mr. Heacock's version of the events of April 1982." Among other things he would have done, Mr. Connelly states he would have filed a notice of appeal from the Probate Court judgment so as to obtain findings from the Probate Court judge. Such findings might have had an issue preclusion effect on some of the factual matters involved in the tort action.

Hardly the least of the reasons for a statute of limitations is to alert the defendant that a claim is asserted, so that the defendant can muster evidence before it has gone stale or has vanished. The limits of reasonableness for notification of a claim are often fixed by a statute of limitations. *Norwood Trust Co.* v. *Twenty-Four Fed. St. Corp.*, 295 Mass. 234, 237 (1936). *Hoch* v. *Gavan*, 25 Mass. at 553. Here the plaintiff undertook, intentionally, to stretch the statute of limitations by a full year. The motion judge was entitled to consider this.

As there was evidence for the motion judge to find as he did, and as those findings supported him in ruling as he did, it follows that his action was free from idiosyncratic choice, whimsical thinking, or capricious disposition. *Berube* v. *Mc-*

*Kesson Wine & Spirits Co.,* 7 Mass. App. Ct. 426, 433 (1979). Rather, the judge's action was rational. There was no abuse of discretion.

*Judgment affirmed.*